IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| BUI THI BICH HONG, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-cv-1216 (RDA/WBP) |
| | ) | |
| MISSISSIPPI DEVELOPMENT REGIONAL CENTER, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Atlantic Union Bankshares Corporation's[1] ("AUBC") Motion to Dismiss (Dkt. 23); Defendants American International & Immigration Law Group ("AIILG"), GBR LP ("GBR"), Robert Lubin, Mississippi Development Regional Center LLC ("MDRC"), and Red Leaf Development LLC's ("Red Leaf") Motion to Dismiss (Dkt. 28); and Defendant Paul Ruby's Motion to Dismiss (Dkt. 41). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter is fully briefed and ripe for disposition.

As for AUBC, the Court considers the Motion together with the Complaint (Dkt. 1), AUBC's Memorandum in Support (Dkt. 24), Plaintiffs' Opposition (Dkt. 47), and AUBC's Reply (Dkt. 51), and the Motion is GRANTED, for the reasons that follow.

[1] Defendant AUBC asserts that it is not the correct successor-in-interest to WashingtonFirst Bank, the escrow agent in the relevant transaction, and therefore Plaintiffs' claim fails as a matter of law. Dkt. 24 at 1. AUBC argues that the actual successor-in-interest is its wholly owned subsidiary, Atlantic Union Bank. *Id.* As it must at this stage, the Court accepts as fact all assertions by Plaintiffs in the Complaint as true and cannot dismiss the Complaint on these grounds.

As for AIILG, Lubin, GBR, MDRC, and Red Leaf ("Lubin Defendants" or "Lubin Parties"), considering the Motion together with their Memorandum in Support (Dkt. 29), Plaintiffs' Opposition (Dkt. 48) and their Reply (Dkt. 54), the Motion is GRANTED-IN-PART and DENIED-IN-PART for the reasons that follow.

And finally, as for Ruby, considering the Motion together with Ruby's Memorandum in Support (Dkt. 42), Plaintiffs' Memorandum in Opposition (Dkt. 55), and Ruby's Reply (Dkt. 57), the Motion is GRANTED, for the reasons that follow.[2]

## I. Background

### A. Factual Background[3]

Plaintiffs Bui Thi Bich Hong, Le Dang Anh Tuan, Ta Thi Kim Oanh, Nguyen Dung, Nguyen Ngoc Ke, Hoang Thu Hoai, Huong Thi Van Ngo, Lien Thi Huynh Le, Khoi Hong Luong, Do Huu Minh Khoa, La Lien Thi Kim, Phan Hoang Tuan, Khuong Anh Van, and Truong Hoang are residents of Vietnam ("Plaintiffs"). Dkt. 1 at 1-2. They have filed a Complaint against Defendants MDRC, GBR, Red Leaf, AIILG, Robert Lubin, Ruby, and AUBC. *Id.* at 2. All Defendants are Virginia residents or companies, with the exception of Ruby, a resident of Tennessee. *Id.*

The instant case stems from the United States Immigrant Investor Program (the "EB-5 Program"), which allows foreign nationals investing in American projects to obtain legal

---

[2] Also pending before the Court is Plaintiffs' Motion for Extension of Time to File Response (Dkt. 52). The parties filed their briefs in compliance with the deadlines set forth therein. Accordingly, the Motion will be granted.

[3] For the purpose of considering the instant Motion to Dismiss, the Court accepts all facts contained within the Complaint as true, as it must at the motion-to-dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

permanent residency. *Id.* ¶ 1. The crux of Plaintiffs' argument is that Lubin, an attorney, and his firm, AIILG, knew that representing, owning and/or controlling the component companies of GBR Project, while simultaneously representing investors as "funds counsel" while also representing them in their immigration proceedings, presented "irreconcilable conflicts of interest in the formation, management and operation of the GBR Project." *Id.* ¶ 100.[4]

Generally, in order to obtain such EB-5 visas, qualified immigrants are required to directly invest at least $1 million in a commercial enterprise creating at least ten full-time jobs for United States workers, which can be met via "a showing of indirect jobs created." *Id.* ¶¶ 1, 15. However, investing in a "targeted employment area," in this case, Gulfport, Mississippi, lowers the requirement to $500,000. *Id.* ¶ 1. Plaintiffs in this case invested $500,000 each in a project to redevelop Centennial Plaza in Gulfport via renovating a hotel and building a new "boutique" hotel to drive tourist and business traffic (the "GBR Project"). *Id.* at 2-3. MDRC, an EB-5 Program Regional Center, collected investments from EB-5 investors in a pooled entity, and then loaned the money to the developer. *Id.* ¶ 16. The pooled entities are usually structured as limited partnerships, with EB-5 investors serving as limited partners, "providing the legal patina required to comply with the EB-5 Program's requirements while facilitating indirect investment by EB-5 investors into qualifying projects." *Id.*

Once United States Citizenship and Immigration Services ("USCIS") approves an I-526 petition, immigrant investors obtain conditional permanent residence for two years. *Id.* ¶ 17. Before the investors file the Form I-829, a Petition by Entrepreneur to Remove Conditions on Permanent Residence status, the EB-5 Center is required to invest the immigrant's capital

[4] Despite the allegations regarding the attorney client and representative relationship forming the crux of the Complaint, the timing and development of those relationships are not fully explained.

contribution into a job-creating commercial enterprise which creates at least ten full-time positions in the United States, shown directly or indirectly via economic models. *Id.* After an investor demonstrates to USCIS that the capital contribution created such jobs, the investor is granted lawful permanent residency via an approved I-829 petition. *Id.* ¶ 18. The GBR Project at issue is the redevelopment of Centennial Plaza in Gulfport, which was to include a Holiday Inn and another "boutique" hotel. *Id.* ¶ 19. Plaintiffs were offered a form of preferred equity in GBR, which then would use virtually all of its investors' capital to invest in the GBR Project. *Id.* ¶ 20. Plaintiffs "sacrificed personally and financially" in their $500,000 investments for what they thought was a reputable EB-5 Regional Center so that they and their families could qualify for the EB-5 visas. *Id.* ¶ 21.

Plaintiffs assert that Lubin and others at AIILG targeted immigration agencies and investors in Vietnam to invest in MDRC-sponsored projects, including the GBR Project. *Id.* ¶ 22. Plaintiffs further assert that AIILG prepared offering documents for the GBR Project with the intent of "enhancing the appearance of the financial stability" of the project "in the eyes of Plaintiffs and other investors." *Id.* The relevant marketing materials and offering documents were representations and financial projections of state, federal, and local government support, including "tax credits" that would supposedly expedite the return of Plaintiffs' capital. *Id.* ¶ 23. Although the marketing materials and a flyer represented to Plaintiffs that the profits from the GBR Project would "ultimately pay them back," Plaintiffs allege that the "fine print" in the offering memoranda written by Lubin were "likely empty promises." *Id.* ¶ 24. Specifically, the terms were that

> **Net proceeds realized from the interest earned, sale, repayment or distribution of profit realized from the Limited Partnership's investments will be allocated and distributed 100% to the Limited Partners until each Limited Partner has received $500,000 in distributions plus a 0.5% Preferred Return based on their Capital Account valuation. Thereafter, the next $12,500,000 shall be distributed to the General Partner and after that, further distributions shall**

> **be allocated and distributed 99% to the General Partner and 1% to the Limited Partners pro rata.**

*Id.* (emphasis in Complaint). The "truth," Plaintiffs allege, is that "just about anything that could be charged to the GBR Project, was charged by its developer RLD," which Lubin controlled. *Id.* Therefore, Plaintiffs allege that Lubin was in fact the ultimate allocator of net profits, not the GBR Project itself. *Id.* And, Plaintiffs assert that Lubin's "actual and inherent conflicts of interest" in being immigration counsel or "source of funds counsel" for virtually every participant in the GBR Project prevented him from making accurate and complete disclosures as to financial and corporate governance matters and acting without conflicting out one or more of his clients. *Id.*

GBR also purported to have a "full-fledged escrow process" to release customer funds to the developer with whom it worked. *Id.* ¶ 25. But Plaintiffs assert that, Lubin, through AIILG, controlled "virtually every financial touchpoint" of the deals in which he was involved because he had (1) direct or indirect ownership in, (2) de facto control over, (3) officer status and/or (4) an attorney/client relationship with each of GBR, MDRC, RLP and the GBR Project as their corporate, securities and/or immigration law counsel. *Id.*

Plaintiffs assert that Lubin's "virtual control" over the GBR Project "presented irreconcilable conflicts of interest that could not be disclosed away." *Id.* ¶ 26. Defendants required Plaintiffs to sign a waiver as part of their subscription agreement. *Id.* Despite these alleged "irreconcilable conflicts," Lubin and AIILG continued to engage in the GBR Project, with AIILG's attorneys, including Lubin and Roy, serving as immigration or "source of funds" counsel to Plaintiffs and requiring them to sign conflict waivers. *Id.* ¶ 27.

Plaintiffs further assert that the Escrow Bank, which had a "close, continued relationship" with AIILG affiliates and Lubin's ventures, "chose to do nothing" about Lubin's alleged "irreconcilable conflicts of interests," and that there was no disclosure in the Plaintiffs' Escrow Agent Agreements of the alleged conflicts of interests between Lubin Parties and the Escrow Bank due to their continuous banking relationship. *Id.* ¶ 28. Plaintiffs allege that Defendants concealed that the conflicts of interest "were in fact not waivable under Virginia's applicable professional conduct rules" and, instead, marketed GBR Project to Plaintiffs as a "one stop shop" for EB-5 benefits. *Id.* ¶ 29. AIILG also affirmed to Vietnamese investors in the GBR Project that they could move money for investment in the Project from Vietnam to the United States, despite "complex money transfer restrictions." *Id.* ¶ 30. As part of the EB-5 application, USCIS asks EB-5 investors to demonstrate their "source of funds" for the EB-5 investments in a way that can be tracked "dime-by-dime." *Id.* ¶ 31. However, Plaintiffs allege that AIILG "inexplicably induced Plaintiffs into using" services that "could not track funds dime-by-dime" but rather "commingled investor funds." *Id.*

Based on the marketing, written strategy and other representations about the GBR Project, between August 2016 and 2017, each Plaintiff paid: (i) $500,000 to GBR for preferred equity; (ii) between $25,000 and $50,000 in administrative fees to MDRC; and (iii) retainers of at least $25,000 to AIILG for immigration law services. *Id.* ¶ 32. Despite the alleged "irreconcilable conflicts of interest," the Escrow Bank released Plaintiffs' funds to GBR Project. *Id.*

Following their investments, AIILG prepared Form I-526s for Plaintiffs to start the EB-5 process. *Id.* ¶ 33. After this, Plaintiffs allege they received "periodic updates" on

the status of the GBR Project from Lubin, which were "generally positive and offered glowing reports to lead a reasonable person to believe that revenue would soon be flowing." *Id.* ¶ 34. However, Plaintiffs allege that, in 2018, balance sheets showed a 20 percent drop in value before the GBR Project even began operating. *Id.*

Plaintiffs allege that the predecessor to AUBC, Sandy Springs Bankcorp, bought WashingtonFirst on or about January 1, 2018. *Id.* ¶ 35. Plaintiffs assert that they were not informed of this change and were unaware of who and how fund escrow matters were being handled. *Id.* In 2018, the Lubin Parties disclosed for the first time disclosed to Plaintiffs in an update deck that the bank needed a first deed on its primary revenue generator (the Holiday Inn) for a $10 million bank loan to complete the GBR Project. *Id.* ¶ 36. Plaintiffs allege that Lubin did not previously disclose this information to Plaintiffs "because Lubin feared a 'run' of redemption requests by investors to the GBR Project, both of whom he represented." *Id.* ¶ 36.

Plaintiffs continued receiving updates on the GBR Project's Progress until July 2024, when USCIS started sending Notices of Intent to Deny Plaintiffs' I-526s based on, in part, "issues regarding the use of money exchange services abroad who could not account for investor funds dime-for-dime." *Id.* ¶ 38. Once the I-526s of an investor were denied, Plaintiffs allege that the GBR Project was obligated to refund their money. *Id.* Plaintiffs allege that Lubin and AIILG failed to disclose that they were facing "similar issues" with unspecified Vietnamese clients invested in other projects under the MDRC umbrella. *Id.* ¶ 39. Plaintiffs also allege that they were not informed that MDRC, AIILG and GBR Project did not have sufficient liquid cash to pay the immigration law firm,

Kurzban, they used for appeals to USCIS. *Id.* Plaintiffs allege these facts were not disclosed due to conflicts of interest. *Id.*

Plaintiffs allege that Lubin Parties represented they would honor redemption and refund requests of investments within 15 days of demands, but that cost overruns in construction and mismanagement by Lubin exacerbated the revenue challenges due to the COVID-19 pandemic. *Id.* ¶ 40. The agreement Plaintiffs cite says GBR "will make all commercially prudent efforts to return" the investments within 15 days of written notice of a request to withdraw. Dkt. 1-3 at 12. In July 2024, and in the months after, Plaintiffs took unspecified steps to recover their $500,000 investments, but they allege that AIILG and Lubins' communications became "erratic," with many investors at first offered "excuses and false assurances by Lubin that they would be repaid in a matter of weeks or months." Dkt. 1 ¶ 41.

After "ghosting Plaintiffs" for "weeks," Plaintiffs allege that Lubin sent proposed agreements to Plaintiffs in late 2024 and early 2025 that provided for the payment of investor funds over time on the condition that Plaintiffs release Lupin Parties from all liabilities. *Id.* ¶ 42. Plaintiffs assert that they learned that the releases were not permitted under the Rules of Professional Conduct of the Commonwealth of Virginia, and also that "it affirmed and validated the conflicted dominion and control of Lubin over the GBR Project itself that was undisclosed for several years." *Id.* Plaintiffs further allege that Lubin and AIILG also failed to disclose to Plaintiffs that they had gotten releases from investors in other projects in the MDRC umbrella and that those other projects had defaulted on their repayment obligations. *Id.* ¶ 43.

After Plaintiffs were delivered the releases, they allege that "virtually all communications between them" and Lubin and AIILG have ceased, "despite repeated requests." *Id.* ¶ 44. Plaintiffs allege, upon information and belief, that "the delay in communication and the repeated lies bought Lubin and the Lubin Entities crucial time in soliciting other MDRC investments from other unsuspecting participants unaware of MDRC's dismal track-record with GBR and its other projects that failed to repay their respective EB-5 investors on a timely basis, if at all." *Id.* ¶ 45.

B. Procedural Background

On June 22, 2025, Plaintiffs filed Complaint. Dkt. 1. On September 3, 2025, Defendant AUBC filed its Motion to Dismiss. Dkt. 23. On September 4, 2025, Defendants AIILG, Lubin, GBR, MDRC, and Red Leaf filed their Motion to Dismiss. Dkt. 28. On September 18, 2025, Defendant Ruby filed his Motion to Dismiss. Dkt. 41. On September 24, 2025, Plaintiffs filed an Opposition to AUBC's Motion to Dismiss and an Opposition to Motion to Dismiss by MDRC, GBR, Red Leaf, AIILG, and Lubin. Dkts. 47, 48. On October 8, 2025, AUBC filed its Reply. Dkt. 51. On October 9, 2025, AIILG, MDRC, Lubin, GBR, and Red Leaf filed their Reply. Dkt. 54. On October 23, 2025, Plaintiffs filed their Opposition to Ruby's Motion. Dkt. 55. On October 29, 2025, Ruby filed his Reply. Dkt. 57.

II. LEGAL STANDARD

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. *Id.* When evaluating a motion filed under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion, *see Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015), but they "may consider documents . . . attached to the motion to dismiss, as long as they are integral to the complaint and authentic[,]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

## III. ANALYSIS

In their Complaint, Plaintiffs assert an exhaustive list of ten counts against Defendants: (i) Rescission Under Virginia Contract Law; (ii) Rescission Under § 29 of the Securities Exchange Act of 1934; (iii) Breach of Fiduciary Duty; (iv) Aiding and Abetting Breach of Fiduciary Duty; (v) Violation of Va. Code Ann. §§ 18.2-499 and -500; (vi) Civil Conspiracy; (vii) Violations of the Virginia Consumer Protection Act; (vii) Legal Malpractice; (ix) Money Had and Received; and (x) Accounting. Dkt. 1 ¶¶ 47-115. Counts I-III are seemingly asserted against the "Lubin Parties" (Lubin, Ruby, Red Leaf, AIILG, MDRC, and GBR through July 2019, and all but Ruby after July 2019); Count IV is asserted against AUBC; Counts V-VII are asserted against all Defendants; Count VIII is asserted against AIILG and Lubin; Count IX is asserted against AIILG, MDRC, and GBR; and Count X is apparently asserted against all Defendants (though it is not clear from the Complaint). *See generally* Dkt. 1. Because the parties do not dispute that Virginia law applies, this Court applies the substantive law of the Commonwealth of Virginia for each of the asserted state law claims. Moreover, because the Defendants generally make the same arguments,

the Court will analyze the matters raised in the Motions by Count and will not separately address each Motion or Defendant except where necessary.

A. Rescission Under Virginia Contract Law (Count I)

The bar for rescission of a contract duly formed is high under the laws of this Commonwealth. As the Supreme Court of Virginia has recognized, it is a remedy "which calls for the highest and most drastic exercise of the power of a court of chancery—to annul and set at naught the solemn contracts of parties." *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 115, (2008) (quoting *Bonsal v. Camp*, 111 Va. 595, 599 (1911)). If a court grants rescission, the contract is "terminated for all purposes, and the parties are restored to the status quo ante." *McLeskey v. Ocean Park Invs., Ltd.*, 242 Va. 51, 54 (1991). To grant rescission, courts in this Commonwealth require "a sufficient averment of facts showing the plaintiff entitled in equity to the relief which he seeks, and satisfactory proof of these facts, to justify the interposition of the court." *Schmidt*, 276 Va. at 115. Further, a court "must be able substantially to restore the parties to the position which they occupied before they entered into the contract." *Id.* Grounds for rescission include fraud, mutual mistake of material fact, lack of consideration, material breach, and illegality. *Devine v. Buki*, 289 Va. 162, 175 (2015); *Miller v. Reynolds*, 216 Va. 852, 856 (1976); *Tristate Dev. & Const., Inc. v. Kim*, 72 Va. Cir. 226, 2006 WL 3420478, at *1; *Young-Allen v. Bank of Am.*, N.A., 298 Va. 462, 469 (2020); *Miller v. Bennett*, 190 Va. 162, 164-65 (1949).

Plaintiffs argue that contracts violate the conflict-of-interest rules of Rule 1.8 of Virginia's Rules of Professional Conduct such that they are "illegal or voidable at the will of the client," and therefore rescindable. Dkt. 1 ¶ 49. Plaintiffs assert that they each paid AIILG (the law firm of Lubin and Ruby) retainers between August 2016 and August 2017 to serve as immigration counsel

and/or "source of funds counsel" for EB-5 visa benefits through investment in the GBR project. Dkt. 1 ¶ 4. Plaintiffs subsequently argue that the contracts signed by Plaintiffs regarding retaining AIILG, paying administrative fees to MDRC, and investments in the GBR Project fall under Rule 1.8, and the "conflicts of interests caused by instances of common control, ownership, legal representation of the Lubin Parties and legal representation of Plaintiffs are non-waivable as a matter of law." *Id.* ¶ 50. Therefore, "all contracts connected to the GBR Project, payment of funds to MDRC, and retention of AIILG are void for illegality and subject to rescission." *Id.* ¶ 51.[5]

The Supreme Court of Virginia has been clear: Rule 1.8 of Virginia's Rules of Professional Conduct is a "rule of ethics, not a rule defining liabilities." *Meuse v. Henry*, 296 Va. 164, 186 (2018). Therefore, a violation "should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached." *Id.* Therefore, as these rules were not "designed to be a basis for civil liability," this contract cannot be voided and subject to rescission for illegality as a matter of law. *Id.* Notwithstanding this issue, the pertinent statute of limitations is also fatal to Plaintiffs' claim.

Defendants Ruby and Lubin Parties argue that Count I is barred by the statute of limitations and cannot be saved by equitable tolling or the discovery rule. Dkt. 29 at 6-9; Dkt. 42 at 4. As for the statute of limitations, in Virginia, there is a five-year statute of limitations for actions on written contacts. Va. Code Ann. § 8.01-246(2); *Marriott v. Harris*, 235 Va. 199, 214 (1988). The party asserting that the statute of limitations has time-barred a cause of action has "the burden of proving

[5] Fundamental to this claim (and others) is a determination of *when* the Plaintiffs became clients of the relevant Defendant attorneys. The prohibition in Rule 1.8 is as to a lawyer entering into "a business transaction *with a client*." Indeed, the exhibits attached to the Complaint suggest that the Plaintiffs were perhaps prospective clients but were not clients at the time some of these agreements were entered. *See* Dkt. 1-3 at 24 (advising "[e]ach prospective investor should consult his, or her or its own legal counsel"); Dkt. 1-5 at 4 ("*If* I elect to retain AIIL, I knowingly waive the issues related to Mr. Lubin's and Mr. Rudy's potential conflicts of interest." (emphasis added)).

that the applicable statutes of limitation had run." *Schmidt*, 276 Va. at 117. Here, Defendants argue that the statute of limitations began to run "no later than August of 2017," which is "when the last of the Plaintiffs could have received" the relevant documents. Dkt. 29 at 6. This would put this cause of action, filed in July 2025, years beyond what is permitted under the statute of limitations.

The period begins to run generally "when the breach of contract occurs," but not when the relief sought is "solely equitable." Va. Code Ann. § 8.01-230. Virginia courts have found rescission to be an equitable remedy. *Parker v. Griffin*, 55 Va. Cir. 191, at *2 (Va. Cir. Ct. 2001). Virginia has a law establishing that a cause of action accrues for "fraud, mistake, misrepresentation, deception, or undue influence" when it "is discovered or by the exercise of due diligence should have been discovered. Va. Code Ann. § 8.01-249(1). However, this law does not cover illegality, which is one of Plaintiffs' arguments for why the contract should be subject to rescission under Virginia contract law. *Id.*; Dkt. 1 ¶ 51. Thus, with illegality off the table, Defendants argue, the discovery rule "can only apply to Plaintiffs' claims which are construed to sound in fraud." Dkt. 29 at 8. Plaintiffs almost belatedly attempt to argue generally, and not specifically to the rescission count, that "fraudulent concealment" is plausibly alleged, which they argue is sufficient "at this stage to defeat a limitations defense." Dkt. 55 at 6. To the extent that Plaintiffs are trying to bring a different claim than one that exists in their Complaint, "it is axiomatic that a Plaintiff may not amend their complaint through an opposition brief." *Oku v. Trumbull Ins. Co.*, 2026 WL 801263, *3 (E.D. Va. Mar. 23, 2026). Therefore, the allegations for

Count I in the Complaint are what control—and Plaintiffs only argue that it is void for illegality, not fraud. Dkt. 1 ¶ 51.[6]

Here, even assuming that Plaintiffs' illegality theory is correct (it is not), the contracts would have been illegal when they were formed. Dkt. 1 ¶ 42. Plaintiffs suggest this would make them "illegal or voidable." *Id.* ¶ 49. As discussed *supra,* the former is not true, and the latter is also not true, interpreting Rule 1.7 of Virginia's Rules of Professional Conduct, which states that conflicts can be waived with clients' consent after consultation if " (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law;(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) the consent from the client is memorialized in writing." Va. R. Prof. Conduct 1.7. Plaintiffs admit they signed the conflict waivers and do not contest the other elements, save for illegality, which is moot, as discussed *supra*. Dkt. 1 ¶ 27. Consultation for the purposes of the Rule means "communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question." *Pappas v. Virginia State Bar*, 271 Va. 580, 588 (2006). Plaintiffs make only conclusory allegations that Defendants "concealed" the alleged conflicts and admit they signed the waivers. Dkt. 1 ¶¶ 27, 29. The notion that selling the project as a "convenient 'one-stop shop' for EB-5 benefits" means the consultation was insufficient for Plaintiffs to appreciate the significance

---

[6] Although unclear, it appears that the premise of the fraud supporting the recission claim relates to the GBR, LP Return of Funds Strategy. Dkt. 1-2. But the Return of Funds Strategy specifically disclaims that it is a guarantee, instead it is characterized as plan backed by more than hope but less than certainty. *Id.* As the document asserts, the plan was being "create[ed]," but remained "a projection and, by law, the operating results and investment cannot be guaranteed." *Id.*

of the matter does not change this result. Dkt. 1 ¶ 29. So too with allegations of "glowing reports"—they are too vague and unspecific to be plausible, and vitally, they appeared to come *after* Plaintiffs signed the waivers. Thus, Plaintiffs have failed to plausibly allege that the potential conflicts were not adequately waived.

Therefore, as the alleged conflicts of interest can be waived, and because the discovery rule does not apply here, this Court applies the five-year statute of limitations, which is fatal to Plaintiffs on Count I, given the relevant start date was in 2017, if not earlier. Dkt. 1 ¶ 32.

Plaintiffs also argue that equitable tolling should apply generally, though not specifically for this count, citing a case that does not address the statute of limitations at all (*Corder v. Antero Res. Corp*, 57 F.4th 384, 402 (4th Cir. 2023)). Dkt. 55 at 6. Plaintiffs argue that equitable tolling should apply under Virginia Code § 8.01–229(D) because Defendants "undertook an affirmative act designed or intended, directly or indirectly, to obstruct [the plaintiffs'] right to file [their] action." Dkt. 48 at 12 (citing *Newman v. Walker*, 270 Va. 291, 298 (2005)). In this regard, Plaintiffs plead little beyond conclusory allegations that Defendants "concealed the non-waivability of the subject conflicts of interest." Dkt. 1 ¶ 29. Such conclusory allegations are not sufficient to defeat a motion to dismiss under the *Iqbal* and *Twombly* standard, especially where Plaintiff concedes that the potential conflict was discussed in the "fine print" detailing the financial structure of the agreement. *Id.* ¶ 24. This is not enough to plausibly plead the sort of obstruction required to trigger equitable tolling, because as Defendants argue, doing so requires "extraordinary circumstance[s]." Dkt. 29 at 7 (citing *Birchwood-Manassas Assocs., L.L.C. v. Birchwood at Oak Knoll Farm*, 290 Va. 5, 8 (2015)). As the Supreme Court of Virginia held in *Birchwood-Manassas*, "conflicts of interest and breaches of fiduciary duties" were not sufficient to trigger equitable tolling. 290 Va. at 8. Plaintiffs try to distinguish *Birchwood-Manassas* by claiming that Lubin's

"obstruction and obfuscation are pled in detail," unlike in *Birchwood-Manassas*, but the relevant provisions of the Complaint that they cite do not make clear what was concealed at the time the contracts were entered. Dkt. 48 at 14. Accordingly, Plaintiffs' argument fails to persuade.

Defendants also argue that because the transactions "were not adverse and the conflicts were waivable, disclosed, and in fact waived," the contracts cannot be subject to rescission." Dkt. 29 at 12. Given the other flaws, this Court need not address this argument with respect to this Count about not being "adverse," but will later in its analysis.

In sum, with respect to the applicable statute of limitations and Virginia courts' interpretation of the Commonwealth's rules of Professional Conduct, Defendants' Motions to Dismiss will be granted with respect to Count I for all relevant Defendants.

B. Rescission Under § 29 of the Securities Exchange Act of 1934 (Count II)

In the case of a violation of Section 29 of the Securities Exchange Act of 1934, contracts that violate federal securities laws can be voided "at the option of the innocent party," which Plaintiffs seek in this case. *See Occidental Life Ins. Co. of N. Carolina v. Pat Ryan & Assocs., Inc.*, 496 F.2d 1255, 1266 (4th Cir. 1974); Dkt. 1 ¶ 54. Plaintiffs allege that AIILG and Lubin's actions to "conceal, minimize and misrepresent irreconcilable conflicts of interest" constitute securities fraud under Rule 10b-5 and Section 20(a) of the 1934 Act, and therefore are subject to rescission under Section 29. Dkt. 1 ¶¶ 55-56.

Plaintiffs' claims are again barred by the statute of limitations, however, despite their general arguments for equitable tolling, as analyzed *supra.* In their Opposition, Plaintiffs do not address the relevant statute of limitations for rescission claims under the Securities Exchange Act. Rather, they argue broadly that Defendants' statute of limitations arguments "do not warrant

dismissal at this stage because Plaintiffs allege facts supporting *equitable tolling* and delayed accrual under the discovery rule." Dkt. 48 at 6 (emphasis in original).

Defendants argue that the relevant statute of limitations requires that claims for rescission under Section 29(b) to be brought within a year of when "plaintiff knew or should have known the facts that form the basis of rescission." Dkt. 29 at 14 (citing *Xeriant, Inc.* v. Auctus Fund LLC, 141 F. 4th 405 (2nd Cir. 2025)). Therefore, because "Plaintiffs acknowledged the conflicts of interest when they signed the waivers," which occurred no later than August 2017, this claim would be time-barred, they argue. *Id.* Under statute, plaintiffs must bring claims under Section 29(b) "within one year after the discovery that such sale or purchase involves such violation and within three years after such violation." 15 U.S.C. § 78cc. Plainly, by text of the statute, given that the contracts were formed in 2017, the 2025 Complaint is well beyond the three-year period of any purported violation. *See Newman v. Prior*, 518 F.3d 97, 100 n.4 (4th Cir. 1975) (noting that "Congress has not favored long limitations in private civil suits under the securities laws" and that the statute of limitations is "three years at the utmost"). Therefore, this Count will be dismissed under the statute of limitations.

Defendants also argue that Plaintiffs failed to plead fraud with the required particularity and failed to sufficiently plead the necessary elements to establish a 29(b) claim for rescission. Turning first to the former argument, to state a claim under Rule 10b-5, "plaintiffs must demonstrate that: (1) the defendants made a false statement or omission of material fact; (2) with scienter; (3) upon which the plaintiffs justifiably relied; (4) that proximately caused the plaintiffs' damages." *Nolte v. Cap. One Fin. Corp.*, 390 F.3d 311, 315 (4th Cir. 2004) (citing *Hillson Partners Ltd. P'ship v. Adage, Inc.*, 42 F.3d 204, 208 (4th Cir. 1994)). To do so, plaintiffs must make their allegations with "particularity [as to] all facts on which that belief is formed." *Id.*

Courts in this Circuit have held that the heightened pleading requirements under Federal Rule of Civil Procedure 9(b) apply to 10(b) claims. *See Black v. Martek Biosciences Corp.*, 2006 WL 8435572, at *3 (D. Md. June 14, 2006); *Krim v. Coastal Physician Grp., Inc.*, 81 F. Supp. 2d 621, 626 (M.D.N.C. 1998), *aff'd*, 201 F.3d 436 (4th Cir. 1999). To do so for the purposes of Rule 9(b), Plaintiffs must "include 'the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Martek*, 2006 WL 8435572, at *3.

Here, Plaintiffs argue they have done so with "granularity" exceeding particularity by alleging Lubin, AIILG, GBR, MDRC and Red Leaf "made misrepresentations about escrow, a fictious 'Return of Funds Strategy," concealed conflicts, diverted funds, misleading updates, and coercive releases." Dkt. 48 at 22. However, Plaintiffs do not pose their Complaint to specify the time of the purported fraud, merely relying on broad generalizations about "periodic updates" and an "Update Deck" from an unspecified source. Dkt. 1 ¶¶ 34, 36. Furthermore, they do not plausibly allege a falsehood or omission of material fact, as they acknowledge that the "fine print" from Lubin "stated that such representations were likely empty promises" as required, and acknowledge that Defendants required Plaintiffs to "disclose away these conflicts." Dkt. 1 ¶¶ 24, 26; *see Nolte*, 390 F.3d at 315 (describing the elements of a Rule 10b-5 claim). Again, with respect to the Return of Funds documents, it is specifically disclaimed that there is a guarantee, instead it is characterized as plan backed by more than hope but less than certainty. Dkt. 1-2. As the document asserts, the plan was being "create[ed]," but remained "a projection and, by law, the operating results and investment cannot be guaranteed." *Id*. Furthermore, Plaintiffs acknowledge that the language they agreed to made Lubin "the ultimate allocator[] of net profits." Dkt. 1 ¶ 24.

Therefore, Plaintiffs have not pleaded fraud with sufficient particularity, and the Count must also be dismissed for this reason.

As to the latter argument, that Plaintiffs failed to sufficiently plead the necessary elements of a rescission claim under Section 29(b), Defendants are also correct. Dkt. 29 at 15. In order to establish such a claim, courts have required plaintiffs to show that "(1) the contract involved a 'prohibited transaction;' (2) the plaintiff is in contractual privity with the defendant; and (3) the claimant is in the class of persons the SEA was designed to protect." *Prassas Cap., LLC v. Blue Sphere Corp.*, 2018 WL 1567362, at *4 (W.D.N.C. Mar. 30, 2018). As Defendants note, nowhere in Plaintiffs' Complaint do they allege facts demonstrating that they were within "the class of persons the SEA was designed to protect." Dkt. 29 at 16. Moreover, Plaintiffs' Opposition changed the basis for the underlying statutory predicate, but "it is axiomatic that a Plaintiff may not amend their complaint through an opposition brief." *Oku,* 2026 WL 801263, at *3; Dkt. 29 at 16. Therefore, this comes too late, as it was for Plaintiffs' claims in their Opposition to Lubin Defendants' Motion about "misrepresentations about escrow, a fictious 'Return of Funds Strategy" and "fund diversions," which Plaintiffs do not connect to their Section 29 claim in their Complaint. Dkt. 48 at 20; Dkt. 1 ¶¶ 52-56.

In sum, due to Plaintiffs' insufficient pleadings and to the relevant statute of limitations, Count II will be dismissed with respect to all relevant Defendants.

C. Breach of Fiduciary Duty (against Lubin Parties) (Count III)

Plaintiffs allege that the Lubin Parties had "fiduciary duties" to Plaintiffs to "manage Plaintiffs' investments with reasonable diligence, in good faith, and in accordance with representations it made to Plaintiffs," along with a "duty of care, loyalty, and not to engage in corporate waste, conduct that involved conflicts of interest or self-dealing." Dkt. 1 ¶ 59. Plaintiffs

allege that the Lubin Parties breached these duties by "justifying, concealing and minimizing irreconcilable conflicts of interest." *Id.* ¶ 60. Defendants have moved to dismiss the claim for being time-barred and for failing to state a claim. Dkt. 29 at 17.

As Defendants have noted, courts have held that the relevant statute of limitations for this cause of action is two years. *See Nassabeh v. Montazami*, 101 Va. Cir. 151 (2019); *AV Auto., L.L.C. v. Bavely*, 85 Va. App. 559, 572 (2025). However, the Fourth Circuit held in 1988 that the applicable statute of limitations is one year, beginning "when the breach was, or should have been, discovered by the plaintiff," and did so again in 1995. *Int'l Surplus Lines Ins. Co. v. Marsh & McLennan, Inc*., 838 F.2d 124, 128 (4th Cir. 1988); *Singer v. Dungan*, 45 F.3d 823, 827 (4th Cir. 1995). Lower courts have indicated that the Virginia appellate courts as "ha[s] not yet answered [the] question [of the nature of the limitations period] in a precedential opinion." *AV Auto.*, 85 Va. App. at 582. But Virginia courts have also held that the discovery rule does not apply for breach of fiduciary duty claims, in apparent contrast with the Fourth Circuit in *Int'l Surplus*. *See Taengsap v. Mingsisouphanh,* 2025 WL 1436225, at *5 (Va. Ct. App. May 20, 2025) ("As many Virginia circuit courts and the District Courts for the Western and Eastern Districts of Virginia have held, Code § 8.01-249(1) explicitly identifies the causes of action subject to the discovery rule, and breach of fiduciary duty is not one of them."); *Jones v. Shooshan*, 855 F. Supp. 2d 594, 603 (E.D. V.a. Feb. 29, 2012) ("Since the *International Surplus Lines* decision, Virginia courts have repudiated the discovery rule for breach of fiduciary duty claims, and the majority of the federal courts in Virginia have followed suit."). On the other hand, Plaintiffs argue that the statute of limitations for breach of fiduciary duty in the Commonwealth is typically three years. Dkt. 48 at

23 (citing *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 206 (2007)).[7] Despite the convoluted state of the case law, under a discovery rule or not, however, this Count would be time-barred, as analyzed *supra*. The purported conflicts of interest were disclosed, seemingly in 2017, and Plaintiffs waived them. Dkt. 1 ¶ 26. Therefore, even applying a discovery rule standard, a "reasonable and prudent [person] under the particular circumstances" would have read the contract and discovered them at that time, accruing the statute of limitations and thus time-barring the Complaint. *McPike v. Zero-Gravity Holdings, Inc.*, 280 F. Supp. 3d 800, 806 (E.D. Va. 2017).

The Court also dismisses the Count based on Plaintiffs' failure to state a claim. Virginia courts have consistently held that the elements of a breach of fiduciary duty claim are: "(1) the existence of a fiduciary duty, (2) the breach of that duty, and (3) resulting damages." *Broadhead v. Watterson*, , 2016 WL 742127, at *6 (W.D. Va. Feb. 24, 2016) (citing *Carstensen v. Chrisland Corp.*, 247 Va. 433, 444 (1994)). A breach of fiduciary duty claim requires proximate causation. *Carstensen,* 247 Va. at 444. Defendants argue that Count III should be dismissed because Plaintiffs fail to allege causation. Dkt. 29 at 18. Plaintiffs claim in their Opposition that the breaches of fiduciary duty damaged them "in the loss of their immigration benefits and loss of their investments." Dkt. 48 at 26 (citing Dkt. 1 ¶¶ 38, 40-42). In their Complaint, Plaintiffs vaguely suggest that "mismanagement" by Lubin put the GBR Project "in a cash squeeze," but fail to plead sufficient specifics to make causation plausible in this case. Dkt. 1 ¶ 40. Plaintiffs do not allege that the issues with the money exchange system were a part of this claim. *Id.* ¶¶ 57-63. Furthermore, Plaintiffs acknowledge that they were taking on significant risk in investing—that

[7] Plaintiff cites this case to suggest there is a three-year statute of limitations for "claims involving property damages such as this one." Dkt. 48 at 23. It is unclear what the property damage would be, and the case cited does not state what the statute of limitations is for breach of fiduciary duty.

the "fine print" indicated representations that "profits" were "likely empty promises." *Id.* ¶ 24. Plaintiffs in their Complaint do not plausibly connect the "conflicts of interest" or other alleged breaches of duty to the damages they purportedly incurred. Therefore, Count III will be dismissed for failing to state a claim.

D. Aiding and Abetting Breach of Fiduciary Duty (Count IV)

Plaintiffs bring Count IV only against Defendant AUBC, which has moved to dismiss the count, arguing that Plaintiffs have failed to state a claim. Dkt. 24 at 1. In this regard, this Court has already dismissed Plaintiffs' Count III of Breach of Fiduciary Duty. The Supreme Court of Virginia has required a valid predicate Breach of Fiduciary Duty claim in order to sustain a claim of Aiding and Abetting Breach of Fiduciary Duty, "assuming without deciding" it would even "recognize such a cause of action." *Uplinger v. Alexandria Overlook Condo. Council of Co-owners*, 2018 WL 3062247, at *4 (Va. June 21, 2018). Therefore, without an underlying predicate act, and whereas it is unclear if it is even a cognizable cause of action, Count IV will be dismissed.

E. Violation of Va. Code Ann. §§ 18.2-499 and -500 (Count V)

Va. Code § 18.2-499 addresses "combinations to injure others in their reputation, trade, business or profession," and § 18.2-500 provides the civil cause of action for what parties have referred to as statutory business conspiracy. Plaintiffs allege that all Defendants have "intentionally, purposefully, and without legal justification, conspired, combined, agreed and mutually undertaken with each other" and others to "willfully and maliciously" injure Plaintiffs "in their trade, business and property." Dkt. 1 ¶ 73. They also allege that the Lubin Parties all had an "independent personal financial stake in the conspiracy to dispossess Plaintiffs of their respective investments in the Project and to deliberately neglect their obligations to complete the Project in order to enrich themselves." *Id.* ¶ 75. AUBC, the Lubin Parties and Ruby argue that

this Count is time-barred under the relevant statute of limitations, and the Lubin Parties and Ruby argue that Plaintiffs have not pleaded the required elements with particularity. Dkt. 42 at 5; Dkt. 29 at 19; Dkt. 24 at 16. AUBC also argues that Count V is barred because Plaintiffs waived all claims and agreed to limit AUBC's liability. Dkt. 24 at 16.

The parties agree that a five-year statute of limitations applies to this claim but disagree about when the claim accrues. Dkt. 48 at 11; Dkt. 24 at 6; Dkt. 54 at 7. The Supreme Court of Virginia has held that the cause of action under Code § 18.2-500 accrues when "one is . . . injured in his business." *Eshbaugh v. Amoco Oil Co.*, 234 Va. 74, 77 (1987). This right of action "accrues when *any* damage, however slight, is sustained." *Id.* (citing *Stone v. Ethan Allen, Inc.*, 232 Va. 365, 369 (1986)) (emphasis in original). This is when one "first sustained injury to his business." *Davis v. Gardiner*, 2025 WL 375815, at *8 (Va. Ct. App. Feb. 4, 2025). As alleged in the Complaint, Plaintiffs' injuries arose as early as August 2016, when Plaintiffs allege they began investing in GBR and paying retainers for immigration law services to AIILG, which would mean the statute of limitations expired years ago. Dkt. 1 ¶ 32. Plaintiffs argue that "each overt act in a continuing conspiracy starts a new limitations period." Dkt. 48 at 11. In doing so, Plaintiffs cite a Fourth Circuit case, but one referencing an entirely different statute which was originally raised *in a criminal case* in the United States District Court for the District of South Carolina. *See United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1398 (4th Cir.1993). Thus, Plaintiffs' argument, quoting *United Med.*, that "the conspiracy began outside the limitations period will not prevent prosecution as long as at least one overt act in furtherance of the conspiracy occurred within five years of the indictment" is not apposite to the issue at hand. *Id.* Accordingly, Count V will be dismissed as time-barred under the statute of limitations.

F. Civil Conspiracy (Count VI)

Plaintiffs also allege common law civil conspiracy against all Defendants, in that they "conspired with one another to assist [AIILG] and Lubin in breaching fiduciary duties owed to Plaintiff" and were "united by a common interest in hiding their wrongful conduct in failing to act upon the irreconcilable conflicts of interest." Dkt. 1 ¶ 79. Plaintiffs allege that Defendants "committed one or more overt acts to conceal their knowledge of these irreconcilable conflicts of interests" in an effort to "deprive Plaintiffs of their legal rights to seek intervention and protect their interests in the GBR Project, and thus their investment funds, and to conceal malpractice of AIILG and Lubin." *Id.* ¶¶ 80-81. Defendants argue that Plaintiffs' claims are barred by the relevant statute of limitations and that Plaintiffs have failed to state a claim beyond conclusory allegations in the Complaint. Dkt. 29 at 20; Dkt. 42 at 2; Dkt. 24 at 8.

As for the statute of limitations, Plaintiffs argue that the statute of limitations on civil conspiracy runs from the last overt act causing damage and also argue the discovery rule applies. Dkt. 55 at 6.; Dkt. 47 at 24. Both Plaintiffs and Defendants correctly argue that that statute of limitations follows that of the underlying tort. *Lesner Pointe Condo. Ass'n, Inc. v. Harbour Point Bldg. Corp.,* 61 Va. Cir. 609, at *8 (Va. Cir. Ct. 2002); Dkt. 47 at 24; Dkt. 24 at 8. In this case, Plaintiffs are not consistent in their Opposition memos about which torts they claim underlie the conspiracy, but premise this claim on Counts I to III (rescission, securities fraud, breach of fiduciary duty), which this Court has already dismissed for failing to state a claim and/or being time barred. Dkt. 48 at 28; *see also* Dkt. 47 at 24 (claiming the underlying tort is fraud or breach of fiduciary duty); Dkt. 1 ¶¶ 77-82 (not specifically alleging any underlying tort). Because all of these claims (Counts I-III) have been dismissed, there is no plausible underlying tort. *See Lesner Pointe*, 61 Va. Cir. at *7 ("In order to state a cause of action for civil conspiracy, a plaintiff must first prove the existence of the underlying cause of action."); *see also Com. Bus. Sys., Inc. v.*

*Halifax Corp.,* 233 Va. 292, 300 (1997) ("[W]ithout proof of the underlying tort, there can be no conspiracy to commit the tort."). Therefore, because the underlying torts alleged have either been time-barred or dismissed for failure to state a claim, Count VI will also be dismissed.

G. Violations of the Virginia Consumer Protection Act (Count VII)

Plaintiffs argue they are consumers for the purposes of the Virginia Consumer Protection Act ("VCPA"), and all "Defendants committed acts of unlawful, unfair, or fraudulent business acts or practices and unfair, deceptive, untrue, or misleading advertising, as encompassed by the relevant provisions of the VCPA." Dkt. 1 ¶¶ 85-86. Plaintiffs argue that Defendants have "systematically violated the fiduciary duties" owed to Plaintiff and "conspired to conceal" the misconduct from Plaintiffs and also violated the Virginia Rules of Professional Conduct in doing so. Dkt. 1 ¶¶ 83-97.

Before turning to other issues, as a preliminary matter, as AUBC correctly argues, banks are explicitly exempt from claims under the VCPA as defined in statute. *See* Dkt. 24 at 15 (quoting 59.1-199 of the VCPA: "Nothing in this chapter [(i.e., Chapter 17, the Virginia Consumer Protection Act)] shall apply to: . . . 4. Banks, savings institutions, credit unions, small loan companies, [etc.]." Plaintiffs effectively concede this and concur with dismissal as to AUBC. Dkt. 47 at 25. Therefore, Count VII is dismissed as to AUBC.

Although the parties dispute the applicable statute of limitations, Plaintiffs' Count VII will be dismissed for failing to plead with the requisite particularity that the VCPA demands. To state a claim under the VCPA, plaintiffs must sufficiently allege "(1) a fraudulent act, (2) committed by a supplier, (3) in connection with a consumer transaction." *Vuyyuru v. Bank of Am.*, 2017 WL 1740020, at *3 (E.D. Va. May 3, 2017). Claims under the VCPA, as they are grounded in fraud, are subject to particularity requirements, as this District Judge and other courts in this District and

Circuit have previously held. *Marcus v. Dennis*, 2022 WL 1527524, at *9 (E.D. Va. May 13, 2022); *Fravel v. Ford Motor Co.,* 973 F. Supp. 2d 651, 656 (W.D. Va. 2013); *Nahigian v. Juno Loudoun, LLC,* 684 F. Supp. 2d 731, 741 (E.D. Va. 2010); *Myers v. Lee*, 2010 WL 2757115, at *6 (E.D. Va. July 12, 2010). This means that Plaintiffs must identify in their Complaint "the agents, officers and employees of the entities who are alleged to have perpetrated the fraud and the details of time and place of the fraudulent acts." *Marcus,* 2022 WL 1527524, at *8 (quoting *Weiss v. Cassidy Dev. Corp.,* 61 Va. Cir. 237, 244 (2003)). Nowhere in Plaintiffs' Memoranda in Opposition to Motion to Dismiss do they directly address Defendants' legal argument that VCPA claims must be pleaded with particularity, but they do say they have generally "pleaded" the "facts" of the case "with particularity." Dkt. 47 at 7; Dkt. 55 at 9.

In Plaintiffs' Complaint, however, they make no coherent allegations about the specific time of the purported fraud beyond vague date ranges and do not discuss the place where it ostensibly occurred. Therefore, it cannot be said they met the bar for particularity in this Complaint and, therefore, Count VII will be dismissed on these grounds for the remaining Defendants.

H. Legal Malpractice (against AIILG and Lubin) (Count VIII)

Plaintiffs allege two grounds for legal malpractice. First, they allege that "Lubin and thus [AIILG] knew as a matter of fact that representation, ownership and/or control over the component companies of the GBR Project, along with simultaneous representation of investors, presented irreconcilable conflicts of interest in the formation, management and operation of the GBR Project." Dkt. 1 ¶ 100. Second, Plaintiffs also allege that Lubin and AIILG "failed to counsel Plaintiffs and others properly as to the use of money exchange services in Vietnam that they knew or should have known would not meet muster with the 'source of funds' review of I-526 petitions sent to USCIS." *Id.* ¶ 101.

In Virginia, legal malpractice actions are governed by the limitation periods for contract claims—three years for oral contract breaches, and five years for written contracts. *Van Dam v. Gay*, 280 Va. 457, 460 (2010); Va. Code Ann. § 8.01-246. For such claims, "the statute of limitations begins to run when the attorney's services rendered in connection with that particular undertaking or transaction have terminated, notwithstanding the continuation of a general attorney-client relationship, and irrespective of the attorney's work on other undertakings or transactions for the same client." *MacLellan v. Throckmorton*, 235 Va. 341, 345 (1988) (quoting *Keller v. Denny*, 232 Va. 512, 518 (1987)). The continuous representation rule is triggered "only when a continuous or recurring course of professional services relating to a particular undertaking is shown to have taken place over a period of time." *Moonlight Enters., LLC v. Mroz*, 293 Va. 224, 230 (2017) (quoting *Keller*, 232 Va. at 518). Therefore, the limitations period starts when "the attorney renders his 'last professional services' related to the particular undertaking." *Id.* at 231. This means "actual work on a particular undertaking, not imputed work." *Id.* at 233. It is the Plaintiffs' burden to establish that the continuing-representation doctrine applies. *Id.* at 231.

The crux of Defendants' and Plaintiffs' dispute in this regard is whether Plaintiffs have sufficiently alleged "any breach of duty," and whether the claim is time-barred. Dkt. 29 at 25; Dkt. 48 at 12. First, as for the statute of limitations, Defendants argue that Plaintiffs' claims are time-barred under a three-year statute of limitations, as the "last professional service that Lubin Defendants rendered" was "submitting the I-526s to USCIS," which came more than three years before the Complaint was filed. Dkt. 54 at 8-9. Plaintiffs argue that because Lubin continued to represent Plaintiffs, as the "EB-5 undertaking—petitions and investments—persisted," and the final USCIS denials came "well within the statute of limitations." Dkt. 48 at 12. Plaintiffs also argue that "neither [AIILG] nor Lubin have attempted to terminate the attorney-

client relationship." *Id.* Because the representation before USCIS was ongoing until the denial of the EB-5 applications, this Court finds that Plaintiffs have sufficiently pleaded facts that it is plausible that this action is not time-barred, and thus declines to dismiss Count VIII on statute of limitations grounds at this stage.

Second, with respect to the "breach of duty," in order to state a claim for legal malpractice under the laws of the Commonwealth, Plaintiffs must plead (1) "the existence of an attorney-client relationship which gave rise to a duty, [(2)] breach of that duty by the defendant attorney, and [(3)] that the damages claimed by the plaintiff client must have been proximately caused by the defendant attorney's breach." *Smith v. McLaughlin*, 289 Va. 241, 253 (2015) (quoting *Shipman v. Kruck*, 267 Va. 495, 501 (2004)). To establish a "breach of duty," plaintiffs must show that the attorney failed to exercise a reasonable degree of care, skill, and dispatch in rendering the services for which the attorney was employed." *Id.* (quoting *Ripper v. Bain*, 253 Va. 197, 202-03 (1997)).

Much of Plaintiffs' claim is implicitly premised on allegations that Defendants violated Rule 1.8 of the Virginia Rules of Professional Conduct with respect to conflicts of interest. Dkt. 1 ¶ 89. The Supreme Court of Virginia has held that "violating the Rules of Professional Conduct, in and of itself, does 'not give rise to a cause of action nor should it create any presumption that a legal duty has been breached' because the Rules of Professional Conduct 'are not designed to be a basis for civil liability.'" *Swango v. Virginia State Bar ex rel. Second Dist., Section I Comm.*, 304 Va. 373, 396 (2025) (quoting Va. Sup. Ct. R. pt. 6, sec. II, Preamble). However, courts have held that violations of such Rules could be sufficient to state a claim for legal malpractice as being probative of failing to comply with the relevant standard of care. *Kim v. Garver*, 81 Va. Cir. 252, at *2 (Va. Cir. Ct. 2010). The relevant portion of Rule 1.8 holds that a "lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or

other pecuniary interest *adverse* to a client unless: (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client; (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; (3) and the client consents in writing thereto." Va. R. Prof. Conduct 1.8(a) (emphasis added).

This Court finds that Plaintiffs have not plausibly stated a claim for legal malpractice based on conflicts of interest. There is no indication that the business transaction would make the lawyer "adverse" to Plaintiffs—the investments were required to as part of their EB-5 applications. Dkt. 1 ¶ 1. In fact, Plaintiffs never alleged that Lubin entered a transaction that made him adverse to them, and, furthermore, Plaintiffs waived all claims about conflicts of interest. Dkt. 29 at 11. As Defendants note, Rule 1.7 allows conflict waivers expressly, despite Plaintiffs' arguments that the conflicts were "irreconcilable," and Rule 1.8(h) only bars waivers of legal malpractice claims. Dkt. 54 at 9; Va. R. Prof. Conduct 1.7, 1.8. As analyzed *supra*, it is not plausible that these conflicts were not waivable under Plaintiffs' allegations.[8]

However, this Court finds Plaintiffs have plausibly alleged a legal malpractice claim with respect to the allegations that AIILG and Lubin "failed to counsel Plaintiffs" appropriately "as to the use of money exchange services in Vietnam that they knew or should have known would not meet muster with the 'source of funds' review of I-526 petitions sent to USCIS." Dkt. 1 ¶ 101. Taking Plaintiffs' factual allegations to be true, as is required at this stage, "one of the threshold considerations USCIS utilizes in approving an EB-5 petition is for an investor to demonstrate their

[8] Additionally, as noted *supra*, it is not clear at what point the lawyer Defendants *began* their representation of Plaintiffs such that their conduct fell with Rule 1.8 at the time the relevant contracts were entered.

'source of funds,' meaning that the funds utilized for the EB-5 investments were obtained from lawful sources and could be tracked dime-by-dime." *Id.* ¶ 31. Given AIILG's past work in EB-5 cases, as Plaintiffs allege, Defendants "knew or should have known of such requirements" but "inexplicably induced Plaintiffs into using money exchange services in Vietnam that could not track funds dime-by-dime but instead commingled the funds of investors with that of others, thus preventing a dime-by-dime tracing as expected by USCIS." *Id.* Defendants allege that Plaintiffs flouted Lubin's advice and retained USIS Group "to identify a reputable money exchange servicer in connection with their contemplated investment activities," which resulted in USCIS being "unable to track their investments with the requisite level of detail, and Plaintiffs' EB-5 applications were denied on this basis." Dkt. 29 at 4. However, taking Plaintiffs' factual allegations to be true, it is plausible that Defendants breached the duty of reasonable care in "fail[ing] to counsel Plaintiffs" to use the proper form of money exchange services. Dkt. 1 ¶ 101. Given Defendants' alleged experience in the field and training as lawyers, it is plausible that they failed the duty of reasonable care to their clients in this regard, given how crucial Plaintiffs allege this money exchange system is to the immigration legal process.

Therefore, Count VIII is dismissed to the extent that it asserts a claim of legal malpractice based on purported conflicts of interest, but the Motion to Dismiss is denied to the extent Plaintiffs assert a legal malpractice claim based on the use of money exchange services in connection with the USCIS process.

I. Money Had and Received (Count IX)

Plaintiffs allege that "money received erroneously must be returned to its rightful owner where it is unjust for the recipient of the money to retain it," and "all funds delivered" to AIILG, MDRC and GBR were erroneously received, as the "irreconcilable conflicts of interests" made the

payments "void as a matter of law." Dkt. 1 ¶¶ 105-06. Plaintiffs argue that Plaintiffs' funds "must be returned to them" with "interest or a market rate of return." *Id.* ¶ 107. Furthermore, Plaintiffs argue that "because the money was improperly or fraudulently used to fund the doomed GBR Project or pay for services unrelated to the intended purpose of Plaintiffs' EB-5 investments or for other fraudulent conveyances, the law imposes a constructive trust upon any assets purchased with Plaintiffs' investments." *Id.* ¶ 108.

In Virginia, an action for Money Had and Received "will lie whenever one has money of another which he has no right to retain and which defendant is obligated by natural justice and equity to refund." *Hartford Fire Ins. Co. v. First Union Natl. Bank*, 45 Va. Cir. 279 at *2 (1998) (citing *Shores v. Shaffer*, 206 Va. 775 (1966)). Plaintiffs appear to have two theories underlying how the money was retained without right: "irreconcilable conflicts of interest" and fraud. Dkt. 1 ¶ 108. As discussed *supra*, Plaintiffs have failed to allege an unwaivable conflict of interest or fraud, negating the idea that there would be "natural justice and equity" in refunding the money. *Hartford*, 45 Va. Cir at *2. They also do not appear to connect the legal malpractice claim about the money exchange system to this claim. Dkt. 1 ¶¶ 103-10. Furthermore, Plaintiffs acknowledged in their Complaint that the "fine print" negated the idea that profits would "ultimately pay them back." Dkt. 1 ¶ 24. Furthermore, in one of Plaintiffs' exhibits, an attached document related to the transaction stated that the project is "at risk." Dkt. 1-2 at 2. Thus, the purported conflicts of interest cannot plausibly be a basis for this Count. So too with fraud. As discussed *supra*, Plaintiffs failed to plead with particularity. Therefore, Count IX will be dismissed.

J. Accounting (Count X)

Plaintiffs argue that the "Offering Documents and their subscription documents" are "invalid and unenforceable contracts that required rescission," and, given the investments made,

"an accounting is necessary to determine the financial condition and transactions of Plaintiffs' investments into the GBR Project." Dkt. 1 ¶¶ 112, 115. As discussed *supra*, Plaintiffs' claims for rescission were dismissed, and therefore, this cannot serve as a predicate for this claim. Virginia law holds that "[a]n accounting in equity may be had against any fiduciary . . . for receiving more than comes to his just share or proportion." *Riverside Healthcare Ass'n, Inc. v. Forbes*, 281 Va. 522, 533 (2011). Accounting is "*discretionary* and hence — even if a party makes a valid showing of the required elements for any given form of relief — there is no assured right to exercise of the court's discretion in his or her favor." *Phillips v. Rohrbaugh*, 300 Va. 289, 305 (2021) (emphasis in original). In this case, Plaintiffs make solely conclusory allegations of "mismanagement" and "false assurances" that are undercut by their own factual assertions—including that the COVID-19 pandemic created "revenue challenges" and documents stating that the project is "at risk." Dkt. 1 ¶ 40; Dkt. 1-2 at 2. Therefore, Count X for accounting will be dismissed.

Plaintiffs further request that a receiver without conflicts of interest be "immediately appoint[ed]" due to the "irreparable and ongoing harm caused by mismanagement" stemming from conflicts of interest. Dkt. 1 ¶ 116. In order to appoint a receiver, courts must have "proof of insolvency, fraud, waste, or improper conduct." *C.F. Tr., Inc. v. First Flight Ltd. P'ship*, 140 F. Supp. 2d 628, 645 (E.D. Va. 2001), *as amended* (Apr. 26, 2001), *aff'd*, 338 F.3d 316 (4th Cir. 2003) (citing *Adelman Assoc. v. Goldsten,* 209 Va. 731, 737-38 (1969)). Plaintiffs' conclusory allegations do not plausibly allege "proof" of any of these. Therefore, Plaintiffs' request for a receiver to be appointed is denied.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that Defendants' Motions to Dismiss (Dkts. 23, 28, 41) are GRANTED-IN-PART and DENIED-IN-PART. The Motions are granted with respect to

all Counts, except for Count VIII to the extent Plaintiffs assert a legal malpractice claim based on the use of money exchange services in connection with the USCIS process; and it is

FURTHER ORDERED that Counts I-VII and IX-X are DISMISSED WITHOUT PREJUDICE and with leave to amend; and it is

FURTHER ORDERED that having all counts against them dismissed, Defendants AUBC and Ruby are dismissed WITHOUT PREJUDICE; and it is

FURTHER ORDERED that the Motion for Extension (Dkt. 49) is WITHDRAWN pursuant to the Withdrawal (Dkt. 50); and it is

FURTHER ORDERED that the Motion for Extension (Dkt. 52) is GRANTED; and it is

FURTHER ORDERED that Plaintiffs have LEAVE TO AMEND with respect to those claims not dismissed with prejudice and are DIRECTED to file any Amended Complaint within THIRTY (30) DAYS from the issuance of this Memorandum Opinion. Plaintiffs are warned, however, that if they fail to timely file an Amended Complaint, the Court will assume that they are electing to proceed only as to those Defendants and claims that have not been dismissed.

It is SO ORDERED.

Alexandria, Virginia
September 3, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge